### Anderson Warbington v. The State.

#### No. 4223. Decided October 25, 1916.

**1.—Murder—Sufficiency of the Evidence—Practice on Appeal.**

The legal question as to the sufficiency of the evidence is not to be measured by what was not proved and might have been proved to strengthen the case, but the question is, whether that which was introduced was sufficient, and if it is, the conviction is sustained, although there were conflicts in the testimony.

**2.—Same—Evidence—Acts of Defendant—Motive.**

Upon trial of murder, there was no error in admitting testimony that defendant had illicit relations with a State's witness, concerning whom the homicide resulted; besides, the bill of exceptions was insufficient.

**3.—Same—Evidence—Non-expert Testimony.**

Where, upon trial of murder, the evidence tended to show that the homicide occurred at night, there was no error in refusing to admit testimony that defendant could not see at all in the dark; this being a conclusion of the witness, who was not an expert; besides, the bill of exceptions was insufficient.

Appeal from the District Court of Harrison. Tried below before the Hon. H. T. Lyttleton.

Appeal from a conviction of murder; penalty, ten years imprisonment in the penitentiary.

The opinion states the case.

*Y. D. Harrison,* for appellant.—On question of insufficiency of the evidence: Tollett v. State, 44 Texas, 95; Lilley v. State, 41 id., 439; Roseboough v. State, 43 id., 570; Proge v. State, 12 Texas Crim. App., 283.

On question of motive and illicit intercourse: Newman v. State, 58 Texas Crim. Rep., 443; Maclin v. State, 65 id., 384.

*C. C. McDonald,* Assistant Attorney General, for the State.

PRENDERGAST, PRESIDING JUDGE.—Appellant was convicted of murder of John Houston, and his punishment assessed at ten years in the penitentiary.

The only serious question in the case is, whether or not the evidence was sufficient to sustain the verdict. Appellant's able attorney in his written brief contends and also in oral argument earnestly and forcibly contended that the evidence was not sufficient. He suggested in argument the absence of evidence which he claimed might have strengthened the State's case, and without which it was insufficient, such as that the State had no evidence that appellant's tracks were seen at or near the body of the deceased, and an absence of testimony that the appellant had a gun with which he could have done the killing. We think the legal question as to the sufficiency of the evidence is not to be measured by what was not proven in these or other particulars, but the question is, whether that which was introduced was sufficient. It may be the State could have strengthened its case in some particulars, and the evidence upon the whole could be said to be somewhat weak. However, we have carefully read and studied the testimony, and our conclusion is that it was sufficient to sustain the verdict and that we would not be justified to hold otherwise.

There were some conflicts in the testimony by some of the witnesses, but in considering a question of this kind the law is, that we must take all the incriminating testimony which would show the offense whether disputed or not, and if thereby guilt is shown, and the jury so find, it is sufficient.

Appellant's defense was alibi. He and his wife alone on the subject testified that, at the time fixed by the witnesses when the gun was fired which killed the deceased, they were at home in bed asleep.

The uncontradicted testimony shows that Lorisia Coby, a negro woman,—appellant being a negro,—had lived on his place in about a quarter of a mile from where he had lived for five years continuously before the killing. That during all these years appellant had "kept" her, and both in daytime and at night frequently had sexual intercourse with her. That about two months before the killing, as she

testified, she had been *weaned off* from him and for these two months had refused to have further sexual intercourse with him. That in effect he complained and upbraided her for this. That the deceased, who lived a mile or two away but in the same neighborhood, had induced her to remove from appellant's place and move to where he lived, and she had arranged with him, and he was going to move her and her family the Monday following the Friday night on which he was killed, and appellant knew all this. That a few days before deceased was killed appellant went to Tom Johnson, a relative of Lorisia, with whom Lorisia consulted about her business, etc., and tried to induce Johnson to get the woman not to leave him. That at this time appellant · asked where deceased lived, and the witness pointed out deceased's house to him, about a quarter of a mile from where they then were. He then asked the witness if he had seen said woman come through a gate leading out of deceased's place a few days before that, and the witness told him that he had. Just at this time they saw deceased himself coming the same route he was asking about the woman having come, and he told the witness that he did not want deceased to see him, and to avoid being seen by him he got behind a wood pile and concealed himself at the time. That the burden of his talk with this witness at this time was to induce the witness to get the woman not to move away from the appellant, but stay with him. Among other things, he then told said witness that he knew somebody had told that deceased was the one that was moving her away from there, and he said: "No man could move her away from there and stay around there."

Lorisia had a grown daughter, Lizzie McGee, and also, it seems, two sons and a little girl about nine years old, who lived with her. That on Thursday evening before the killing Friday night, appellant went to Lorisia's house crying and asked where she was, and Lizzie told him she had gone off, and he asked if she had gone to hunt a place. Lizzie told him she reckoned so, and he said: "Are you going to · leave me anyhow?" Lizzie replied she reckoned so, and he then said: "You children never · have been down in prayer with me, and I want you to go down in prayer with me one time." He then went down in prayer, and among other things, he prayed: "Turn Lorisia while it is turning time." He then asked Lizzie if she would do something for him. She replied she didn't know. He said: "Are you going to John Houston's today?" Lizzie told him she was. He said to her: "I want you to tell John Houston to come down here to your house tomorrow night, I want to see him on some business." And he told her not to let anybody hear her tell him. That she promised to tell deceased; went up to deceased's house the next day; took him off by himself and told him what appellant had told her to tell him; that is, to come down to her house that night,—that appellant wanted to see him on some business; and that deceased answered: "All right."

Appellant went to Marshall, some thirteen miles distant from where

he lived, on the next day, Friday, and while there bought two BB cartridges. He returned home, reaching there late in the evening. He said, after reaching home, he saw some smoke about half way between his house and Lorisia's and went down to see about it. Lorisia testified that he came to her house that evening about sundown. That she was out in the crib shelling corn at the time, and that he asked her why she spoke to him so "snappish" and treated him so cool as she had done the last two or three months. She denied this, and he asserted that she had; and that he then asked her if she had made up her mind about leaving, and she told him that she had concluded not to stay. He then asked: "Don't you think somebody is 'rootworking' me and you?" and she replied, "No"; and that he said she might be mistaken.

That the deceased, John Houston, was killed that night about 7 o'clock, or a little later, about 200 yards from Lorisia's house, in a road or path back of her garden, which road or path led around to her house. That two shots were fired at the time, one striking deceased in the side of the face and the other in the breast near the heart, killing him. That the shot in his breast were large shot. That when Lorisia and her children heard these two shots, they immediately left her home and went to a nearby neighbor's, where she remained the balance of the night. Early the next morning the body of the deceased was found at the place indicated, showing that he had been killed the night before.

John Newhouse testified that just before appellant's trial at the preceding term of the court, appellant told him he wanted him and would pay him to swear on his trial that at the time said shooting took place he, the witness, was at appellant's home and stayed there until 8 or 9 o'clock, and that appellant went to bed before he left. In other words, he wanted this witness to falsely testify to an alibi for him. The witness said that he was not at his house at the time, but four or five miles therefrom, and knew nothing about the shooting or killing at the time and refused to swear as appellant wanted him to.

The testimony, we think, authorized the jury to find and believe, as they did, that appellant and no one else shot and killed the deceased. There is not an intimation anywhere in this record that any person other than appellant had any motive whatever for killing the deceased. The testimony shows that he had the most powerful motive; that he had threatened to do so and prepared himself to do so and enticed the deceased from his home to Lorisia's house for that purpose.

Appellant objected to the testimony of Lorisia and her daughter to the effect that appellant had "kept" Lorisia for said years and had had sexual intercourse with her. This testimony was clearly admissible to show motive on appellant's part.

The appellant had the jailer to testify that while he kept appellant in jail on the charge in this case, at night he would stumble against the benches and seats in walking around in the jail. The witness was

not an expert. From this testimony by the jailer he sought to have him further testify that appellant could not see at all in the dark. The court properly excluded any such conclusion of the witness, he not being an expert.

We have thus held on these last points as if the questions were properly raised. As a matter of fact, it seems they were not raised in such a way that we would be authorized to consider them.

The judgment is affirmed.